UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DANIEL GAUTIERI                          :
                                         :
          v.                             :        C.A. No. 07-109ML
                                         :
MICHAEL J. ASTRUE                        :
Commissioner, Social Security            :
Administration                           :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits

("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint

on March 23, 2007 seeking to reverse the decision of the Commissioner. On December 31, 2007,

Plaintiff filed a Motion to Reverse or Remand the Decision of the Commissioner. (Document No.

9). On January 25, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of

the Commissioner. (Document No. 10).

This matter has been referred to me for preliminary review, findings and recommended

disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record and the legal

memoranda filed by the parties, I find that there is not substantial evidence in this record to support

the Commissioner's decision and findings that the Plaintiff is not disabled within the meaning of the

Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the

Decision of the Commissioner (Document No. 10) be DENIED and that the Plaintiff's Motion to

Reverse or Remand the Decision of the Commissioner be GRANTED. (Document No. 9).

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for DIB on May 7, 2004, alleging disability as of April 4, 2003. (Tr. 34-36).  Plaintiff's insured status will expire on September 30, 2009.  (Tr. 12).  Plaintiff's claim was denied initially on August 20, 2004 and on reconsideration on December 23, 2004.  (Tr. 12). Plaintiff requested an administrative hearing which was held on June 29, 2006 before Administrative Law Judge Barry H. Best ("ALJ") at which time, Plaintiff, represented by an attorney, and a vocational expert appeared and testified.  (Tr. 402-434).  The ALJ issued a decision on August 17, 2006 finding that Plaintiff was not disabled during the period at issue.  (Tr. 10-23).  The Appeals Council denied Plaintiff's request for review on January 23, 2007, (Tr. 6-9), making the ALJ's decision the final decision of the Commission.  A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that (1) the ALJ's mental RFC findings are not supported by substantial evidence; and (2) the ALJ failed to follow the proper standards for pain evaluation and credibility.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record to support the ALJ's finding that Plaintiff was not disabled during the relevant time period.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1ˢᵗ Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and

Human Servs., 647 F.2d 218, 222 (1ˢᵗ Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must

affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v.

Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1ˢᵗ Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356,

1358 (11ᵗʰ Cir. 1991).  The court must view the evidence as a whole, taking into account evidence

favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs.,

829 F.2d 192, 195 (1ˢᵗ Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11ᵗʰ Cir. 1986) (court also must

consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies

incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he

or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1ˢᵗ Cir. 1999) (per curiam);

accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11ᵗʰ Cir. 1991).  Remand is unnecessary where

all of the essential evidence was before the Appeals Council when it denied review, and the evidence

establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11

(1ˢᵗ Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6ᵗʰ Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42

U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276

F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's

decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5ᵗʰ Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.      Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.   Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.   The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.     Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was fifty-two years old on the date of the ALJ's decision.  (Tr. 34).  Plaintiff completed high school and one year of college, and worked as a supply sergeant in the National Guard for eighteen years.  (Tr. 53, 405).  He also served a several-year period of active duty in the military in the 1970s.  (Tr. 394).  Plaintiff alleged disability due to double vision, headaches, fatigue, back and ankle pain, depression and hypertension.  (Tr. 37, 52).

On April 4, 2003, Plaintiff was admitted into Kent County Hospital for complaints of headaches, trouble breathing and chest pain.  (Tr. 65-66, 69, 71, 250).  Plaintiff was released that same day and scheduled for an angiography study of the brain (Tr. 66, 69), which revealed dominant left vertebral artery and mild prominence of the basilar artery.  (Tr. 68).

On May 20, 2003 and December 9, 2004, Dr. Guy Geffroy opined that Plaintiff could sit, stand, and/or walk for eight hours in an eight-hour workday; lift and carry up to one-hundred pounds continuously; repetitively grasp, push, pull, and perform fine manipulation with the hands; use both feet for repetitive movements; continuously bend, squat, crawl, and reach above shoulder level;

never climb; be exposed to marked changes in temperature, humidity, dust, fumes, and gases on an unlimited basis; and never be exposed to unprotected heights, moving machinery, or driving of automobile equipment.  (Tr. 115, 121, 157).

On May 28, 2004, Dr. Amir Missaghian, a Disability Determination Services ("DDS") physician, opined that Plaintiff had limited accommodation and could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand, walk, and/or sit for six hours in an eight-hour workday; push/pull without limitation; frequently balance, stoop, kneel, crouch, and crawl; occasionally climb; and be exposed to pulmonary irritants and hazards on less than a moderate basis, and temperature extremes, humidity, and noise on less than a concentrated basis.  (Tr. 84, 86, 87, 88).

On June 17, 2004, Dr. Concetta DiLeonardo, a Clinical Psychologist, saw Plaintiff, who complained of depression (Tr. 166-171).  Upon exam, Plaintiff had full orientation; a euthymic and congruent mood; intact memory; normal thought processes and content; and intact judgment and insight.  (Tr. 169).  Dr. DiLeonardo opined that Plaintiff had no significant psychiatric issues that required further clinical intervention at that time.  (Tr. 169, 170).

On August 15, 2004, Dr. Frederic Evans performed a consultative psychiatric evaluation of Plaintiff, (Tr. 94-96), who, upon exam, had poor thought organization, no signs of depression, no display of free anxiety, average intelligence, intact memory, mild situational anxiety and the ability to manage his funds.  (Tr. 95-96).  Dr. Evans diagnosed Plaintiff with dyslexic disorder and opined that, psychologically, he could continue to do his same work.  (Tr. 96).

On August 19, 2004, Dr. Clifford I. Gordon, a DDS psychologist, opined that Plaintiff suffered from non-severe organic mental and anxiety-related disorders.  (Tr. 97).

From September 10, 2004 through May 18, 2005, Plaintiff underwent psychotherapy with Ms. Minerva E. Thomas, a social worker.  (Exs. 13F and 22F).

From November 4, 2004 through May 18, 2006, Plaintiff underwent psychological counseling with Dr. Alan D. Sirota.  (Exs. 13F, 22F, 25F and 26F).

On December 21, 2004, Dr. Joseph F. Callaghan, a DDS physician, opined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; stand, walk, and/or sit for six hours in an eight hour workday; push/pull without limitation; frequently climb ramps and stairs, stoop, and kneel; occasionally balance and crawl; never climb ladders, ropes, and scaffolds; use his depth perception on a limited basis; and be exposed to noise on less than a concentrated basis and hazards on less than a moderate basis.  (Tr. 224-227).

On December 22, 2004, Dr. J. Stephen Clifford, a DDS psychologist, opined that Plaintiff suffered from non-severe affective, anxiety-related and somatoform disorders.  (Tr. 233).

On October 13, 2005, Dr. Phillip Russell saw Plaintiff, (Tr. 357-359), who, upon exam, was alert and oriented with no motor abnormalities; a pretty good mood; linear, relevant, and goal-directed thoughts; an euthymic affect; intact memory; and fair insight and judgment.  (Tr. 358). Plaintiff was diagnosed with somatoform and depressive disorders and a Global Assessment of Functioning ("GAF") score of 50.  (Tr. 359).

On May 19, 2006, Dr. Russell completed an Emotional Impairment Questionnaire, in which he opined that Plaintiff could not sustain competitive employment on a full-time basis.  (Tr. 377-380).

On June 5, 2006, Dr. Sirota completed an Emotional Impairment Questionnaire, in which he opined that Plaintiff could not sustain competitive employment on a full-time basis.  (Tr. 381-384).

### A.      The ALJ's Mental RFC Finding is not Supported by Substantial Evidence

The ALJ decided this case adverse to Plaintiff at Step 5.  The ALJ concluded that Plaintiff was "severely impaired" (20 C.F.R. § 404.1520(c)) with depression, anxiety and somatoform disorder.  (Tr. 14).  The ALJ found that these mental impairments were not of "Listing-level" severity but he did incorporate non-exertional limitations into Plaintiff's RFC assessment.  Id.  In particular, the ALJ decided that Plaintiff could perform a "wide range of light exertion" with moderate impairments in the ability to maintain attention and concentration.  (Tr. 14-15).  Based on testimony from the vocational expert ("VE"), the ALJ rendered a no disability finding because Plaintiff's RFC did not preclude available light work.  (Tr. 23).  However, the VE testified that such work would be precluded if Plaintiff was "moderately severe limited" in his ability to maintain attention and concentration.  (Tr. 432).

In May 2006, Plaintiff's treating Psychologist (Dr. Sirota) and treating Psychiatrist (Dr. Russell), both of the Veterans' Administration Medical Center ("VAMC"), completed mental RFC questionnaires regarding Plaintiff.  See Exs. 28F and 29F.  Both opined that Plaintiff was unable to "sustain competitive employment on a full-time, ongoing basis."  Id.  Dr. Sirota concluded that Plaintiff had moderately severe impairments in his ability to understand, carry out and remember instructions, and to perform simple, repetitive or varied tasks.  (Tr. 383, 384).  He found severe limitations in Plaintiff's ability to perform complex tasks and to respond to customary work pressures.  Id.  Dr. Sirota noted that Plaintiff has "increasingly severe depressive d/o with features of anxiety and is functionally impaired to a severe degree."  (Tr. 384).  Dr. Russell concluded that Plaintiff was only mildly impaired in his ability to perform simple tasks but severely impaired in his ability to respond to customary work pressures and respond appropriately to co-workers.  (Tr. 379-

380).  Dr. Russell also found a moderately severe impairment in Plaintiff's ability to perform varied tasks.  (Tr. 380).

Plaintiff began treating with Dr. Sirota in 2004 (Tr. 213) and saw him regularly through 2006.  Plaintiff began treating with Dr. Russell in 2005 (Tr. 363) and saw him regularly through 2006.  Thus, both clearly are treating practitioners.  A treating physician is generally able to provide a detailed longitudinal picture of a patient's medical impairments, and an opinion from such a source is entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence in the record.  See 20 C.F.R. § 404.1527(d). The amount of weight to which such an opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations.  See 20 C.F.R. § 404.1527(d)(1).  If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2).

Although not expressed explicitly by the ALJ, it is apparent that the ALJ declined to give controlling weight to the treating source opinions of Dr. Russell and Dr. Sirota.  The ALJ assessed a moderate, non-exertional impairment in the ability to maintain attention and concentration.  This level of impairment is significantly less than was assessed by Plaintiff's treating sources but somewhat more than the mild impairment assessed by the two non-examining consultants and one examining consultant in 2004.  Compare Exs. 28F and 29F with Exs. 10F, 11F and 15F. Thus, the issue presented is whether there is substantial evidence in the record for the ALJ's decision to give significantly reduced weight to the 2006 treating source opinions and render an RFC much closer in line with the 2004 consulting opinions.

-15-

It is not generally error for an ALJ to "reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (citing Shaw v. Sec'y of Health and Human Servs., 25 F.3d 1037 (1st Cir. 1994)). However, the First Circuit has recently instructed that a reviewing Court must assess the completeness of the record before the reviewing consultant. See Alcantara v. Astrue, No. 07-1056, 2007 WL 4328148 (1st Cir. Dec. 12, 2007) (per curiam). In Alcantara the First Circuit reversed this Court in a case involving the same ALJ and a similar sequential record, and remanded for further administrative proceedings. In particular, the ALJ in Alcantara discounted the opinions of treating mental health sources and relied primarily upon the opinion of a non-examining consultant. Id. at *1. However, the First Circuit held that the consultant based his opinion on a "significantly incomplete record" including "no more than the first third of the record for the period of alleged disability." Id. The First Circuit concluded that the consultant's opinion was thus "irrelevant to most of the disability period" and that "[a]bsent a medical advisor's or consultant's assessment of the full record, the ALJ effectively substituted his own judgment for medical opinion." Id.

In this case, the consultants also had a limited record before them. Plaintiff began mental health treatment at the VAMC in September 2004. (Tr. 164). Dr. Gordon, one of the non-examining consultants, noted on August 19, 2004 that Plaintiff had "no mental health treating source." (Tr. 109). The ALJ hearing was held on June 29, 2006 and the ALJ rendered his decision on August 17, 2006. Thus, the consultants did not have the benefit of nearly two years of records regarding Plaintiff's mental health treatment as they rendered their opinions in 2004.

The ALJ did not utilize a medical expert or other consultant to opine on the full record, despite the fact that he concluded that Plaintiff's "impairments are not well defined, particularly the psychiatric impairment." (Tr. 22). If the degree of impairment was not well defined, the ALJ could have obtained further expert or consultative evidence.

The ALJ also misinterpreted certain aspects of the record in finding that they did not support a disabling level of mental impairment. For instance, the ALJ noted that while Dr. Sirota (treating Psychologist) indicated that Plaintiff tended to stay home and isolate due to his conditions, "notes reflect he got together with old co-workers and reestablished a connection with his uncle." (Tr. 21). However, a single lunch with fellow veterans (Tr. 357) and a single visit with an uncle (Tr. 360) is not necessarily inconsistent with a tendency towards isolation and no medical source so opined. Further, the ALJ noted that Plaintiff reported spending the day "tending to home maintenance" (Tr. 21) but the record reflects that Plaintiff was forced to sell his family house in early 2005 for financial reasons and moved into an apartment. (Tr. 288, 299). Finally, the ALJ speculates that the GAF ratings made by Plaintiff's treating mental health providers were "carried over on examinations rather than assessed on each presentation." (Tr. 21). Although Plaintiff's GAF ratings were fairly consistent, they were not identical and ranged from 47 to 50. See generally Exs. 13F, 22F and 25F. There is not substantial evidence supporting the ALJ's decision to discount the GAF ratings as simply "carried over."

In view of the unique state of the record in this case and the absence of a medical expert's or consultant's assessment of the full record, the ALJ substituted his own judgment for medical opinion. The ALJ reviewed the medical evidence and rendered a lay opinion which contradicted the treating source opinions. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay

person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."). In particular, the ALJ independently reviewed and interpreted nearly two years of mental health treatment records when he significantly discounted the weight given to the 2006 treating source opinions and assessed a mental RFC finding more in line with the 2004 consulting opinions.

Because I find Plaintiff's primary argument to be persuasive, it is unnecessary to consider Plaintiff's alternative argument for remand. For the reasons discussed above, a sentence-four remand is warranted in this case and I so recommend. On remand, I recommend that the ALJ be advised to utilize a medical expert or other appropriate consultative vehicle to assess the entirety of the medical record.

## VI.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be DENIED, that Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner (Document No. 9) be GRANTED and that final judgment enter for Plaintiff remanding this matter for further administrative proceedings consistent with this recommendation.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-

Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605

(1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 13, 2008